Oscar W. JONES, Plaintiff–Appellant,

v.

Lou BLANAS; County of Sacramento, Defendants–Appellees.

No. 02–17148.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted Nov. 1, 2004.

Filed Dec. 27, 2004.

922

Grace K. Won and Darrell A. Fruth, Farella Braun + Martel LLP, San Francisco, CA, for the plaintiff-appellant.

David A. Melton, Porter, Scott, Weiberg & Delehant, Sacramento, CA, for the defendants-appellees. With him on the briefs was Terence J. Cassidy.

Before B. FLETCHER, NOONAN, and THOMAS, Circuit Judges.

BETTY B. FLETCHER, Circuit Judge.

Plaintiff-appellant Oscar W. Jones ("Jones") appeals from a grant of summary judgment in his 42 U.S.C. § 1983 action in favor of defendants-appellees Sheriff Lou Blanas and the County of Sacramento. Jones seeks damages based on violations of his constitutional rights while he was confined in jail as a civil detainee. He had completed his criminal sentence, but was awaiting proceedings under California's Sexually Violent Predator Act. We have jurisdiction pursuant to 28 U.S.C. § 1291. We affirm in part and reverse in part the grant of summary judgment, and we remand for additional discovery. We further direct the district court to appoint counsel for Jones.

## I. BACKGROUND

Our summary of the facts reflects two important principles. First, as this is an appeal from summary judgment, we view the evidence in the light most favorable to Jones, the nonmoving party. *Rene v. MGM Grand Hotel, Inc.*, 305 F.3d 1061, 1064 (9th Cir.2002) (en banc). Second,

because Jones is pro se, we must consider as evidence in his opposition to summary judgment all of Jones's contentions offered in motions and pleadings, where such contentions are based on personal knowledge and set forth facts that would be admissible in evidence, and where Jones attested under penalty of perjury that the contents of the motions or pleadings are true and correct. *McElyea v. Babbitt,* 833 F.2d 196, 197 (9th Cir.1987) (verified pleadings admissible to oppose summary judgment); *Johnson v. Meltzer,* 134 F.3d 1393, 1399–1400 (9th Cir.1998) (verified motions admissible to oppose summary judgment); *Schroeder v. McDonald,* 55 F.3d 454, 460 n. 10 (9th Cir.1995) (pleading counts as "verified" if the drafter states under penalty of perjury that the contents are true and correct).

At issue in this case is whether Jones's constitutional rights were violated while he was civilly detained in the Sacramento County Jail under California's Sexually Violent Predator Act (SVPA), Cal. Welf. & Inst.Code § 6600 *et seq.* The SVPA authorizes the state to seek the involuntary commitment of any person who has been convicted of certain enumerated violent sex offenses against at least two victims and who has a diagnosed mental disorder that makes the person a dangerous likely recidivist. *Id.* §§ 6600(a)(1), 6601(a)(1). When an individual in state custody is identified by the Director of Corrections as a candidate for commitment under the SVPA, the state may continue to hold him for 45 days beyond his scheduled release date for an evaluation by the state Department of Mental Health. *Id.* §§ 6601(c)-(i); 6601.3. If a judge determines there is probable cause to believe the individual is likely to commit sexually violent offenses upon release, the judge must order a trial to determine whether the individual is · a sexually violent predator as defined in the act. *Id.* § 6602(a). The individual is to

"remain in custody in a secure facility" until the completion of the trial. *Id.* If the court (or jury, upon request, *id.* § 6603(a)) concludes beyond a reasonable doubt that the individual is a sexually violent predator, the individual is to be civilly committed for two years "for appropriate treatment and confinement in a secure facility." *Id.* § 6604.

Though the SVPA does not specify any particular type of "secure facility" in which detainees under the law are to be held, state law provides that individuals who are held under civil process must be "confined separately and distinctly" from individuals awaiting criminal trials and from individuals held under criminal sentence. Cal.Penal Code § 4001; *see also id.* § 4002(a)("Persons committed on criminal process and detained for trial, persons convicted and under sentence, and persons committed on civil process, shall not be kept or put in the same room."). In 2001, the California legislature added the following provision: "Inmates who are held pending civil process under the sexually violent predator laws shall be held in administrative segregation. For purposes of this subdivision, administrative segregation means separate and secure housing that does not involve any deprivation of privileges other than what is necessary to protect the inmates and staff." *Id.* § 4002(b).

In June 1997, Jones was incarcerated at the Susanville State Prison for a parole violation. On December 3, 1997, shortly before the conclusion of Jones's six-month sentence, he was transferred to the Sacramento County Jail to await a hearing on a petition for commitment as a sexually violent predator; the following day, the court ordered Jones detained at that facility under the SVPA. Although the SVPA requires a probable cause hearing within 55 days, *see* Cal. Welf. & Inst.Code §§ 6601.3,

**924**

6601.5, it was not until September 16, 1998, that the state superior court found probable cause to continue to hold Jones for SVPA commitment proceedings. On December 13, 1999, at the conclusion of Jones's trial by jury, he was found to be a sexually violent predator. Jones was committed to Atascadero State Hospital on January 4, 2000.

In total, Jones was incarcerated at the Sacramento County Jail from December 3, 1997, to January 4, 2000, a period of over two years. For roughly the first year of his time at the County Jail—from December 3, 1997, to December 9, 1998—Jones was housed with the general criminal population of the Jail. For Jones's remaining time at the Sacramento County Jail—from December 9, 1998, to January 4, 2000—he was housed in an administrative segregation unit known as "T–Sep." According to the declaration of a sheriff's deputy, this is not a disciplinary housing unit. However, in T–Sep Jones was subject to far more restrictive conditions than those afforded to the general jail population. Jones's recreational activities were completely taken away, and he was allowed only one hour of exercise every other day. Phone calls and visiting privileges were considerably more limited in T–Sep. The time Jones was allowed out of his cell was reduced more than tenfold. Jones was denied access to religious services. Jones's law library access was considerably curtailed: while in T–Sep, Jones was denied physical access to the law library; he could request, by citation only, copies of cases no more than twenty pages long.

Throughout his time at the Sacramento County Jail, Jones was subjected to numerous strip searches, some of which were conducted outdoors, and many of which

were conducted at gunpoint in the middle of the night and accompanied by various intimidating tactics including poking with large weapons. On at least three occasions, Jones was led to the outside recreation area; forced at gunpoint to remove all clothing within the sight of many deputies (including female deputies); forced to lift his penis and testicles for inspection, run his fingers through his hair, then run his fingers inside his mouth; and forced to bend over, spread his buttocks apart with his hands, and cough three times.

On December 29, 2000, Jones brought this 42 U.S.C. § 1983 action against Sheriff Lou Blanas and the County of Sacramento for damages based on violations of his constitutional rights during the twenty-five-month period he was confined awaiting adjudication and eventually commitment under the SVPA.[1] On appeal, Jones claims that Blanas and the County violated his rights to free exercise of religion, access to the courts, freedom from unreasonable searches, and substantive due process as to conditions of confinement. Jones also claims that the district court abused its discretion in preventing adequate discovery.

On July 6, 2001, the magistrate judge ordered a four-month discovery period, with written discovery requests due sixty days before the end of the discovery period. Some of Jones's discovery requests were timely; some were filed several weeks after the deadline. On October 24, 2001, Jones moved the court for a thirty-day extension of discovery, because mail service had been discontinued at Atascadero due to the events of September 11, 2001, and because of disagreements with the defendants over discovery. Stating that Jones had failed to show good cause

---

1. Jones included several other officials as defendants; the magistrate judge refused service on these defendants because Jones had not stated a claim against them upon which relief could be granted. Jones does not challenge these dismissals here.

for an extension, the court denied the motion.

Blanas and the County soon thereafter moved for summary judgment. Jones responded first with a cross-motion for summary judgment, and then with a motion to stay defendant's summary judgment pursuant to Federal Rule of Civil Procedure 56(f). Jones also moved to compel responses to his discovery requests; the court once again found no good cause to extend discovery and denied Jones's motion.

The magistrate judge then denied Jones's Rule 56(f) motion and issued Findings and Recommendations (which the district court judge later adopted in full as his opinion). One of the magistrate judge's recommendations was that the court grant summary judgment to defendants on Jones's free exercise claim, because Jones had not explained how his inability to participate in religious services inhibited his practice of religion. In Jones's Objections to the Findings, he attempted to expand his record by including a statement discussing the importance of religious services to his Christian faith.

A week after Jones filed his Objections, the district court adopted the Findings in full, granted summary judgment to the defendants, and denied summary judgment to Jones. The court first applied California's one-year statute of limitations for personal injury claims and found all claims accruing prior to December 29, 1999, to be time-barred. Though the court denied Eleventh Amendment immunity to Blanas and determined that the County could be subject to liability for Blanas's actions under *Monell v. Department of Social Services*, 436 U.S. 658, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978), the court

found that defendants were entitled to summary judgment as to all of Jones's claims. On Jones's free exercise claim, the court found that Jones "ha[d] not explained how a general denial of access to religious services ... denied him his ability to practice his own religion (assuming of course that plaintiff is religious)." On Jones's access to the courts claim, the court found that Jones "failed to present any evidence indicating that he ha[d] been injured in any way by his inability to participate in 'law library activities,' as he must do pursuant to *Lewis v. Casey*," 518 U.S. 343, 351, 116 S.Ct. 2174, 135 L.Ed.2d 606 (1996). On Jones's unreasonable search claim, the court found that Jones "ha[d] not presented anything indicating defendant Blanas was involved in the search in any way, nor that the search was conducted pursuant to a policy adopted by the County." Finally, as to Jones's due process claim, the court found that none of Jones's conditions of confinement rose to the level of a constitutional violation. Specifically, the court concluded that Jones had not established a right to any particular amount of recreation, exercise, or fresh air and sunlight, or identified any condition "objectively serious enough to implicate plaintiff's constitutional rights."[2] Pursuant to the district court's opinion, summary judgment was entered for defendants on September 27, 2002.

The timeliness of the appeal is contested. Jones's notice of appeal was dated October 24, 2002, and he attested in writing that he deposited it in the Atascadero State Hospital mail system on that date, with postage prepaid. The district court docketed the notice of appeal on October 29, 2002.

---

**2.** The court also granted summary judgment on Jones's remaining claims, which have not been raised in this appeal.

## II. STANDARDS OF REVIEW

■ A district court's dismissal of a claim based on a statute of limitations is reviewed de novo. A district court's decision whether to apply equitable tolling is generally reviewed for abuse of discretion, but where the relevant facts are undisputed, review is de novo. *Santa Maria v. Pac. Bell,* 202 F.3d 1170, 1175 (9th Cir. 2000).

■ District court rulings concerning discovery are reviewed for abuse of discretion. *Kulas v. Flores,* 255 F.3d 780, 783(9th Cir.2001). The same standard applies to a district court's decision not to permit additional discovery pursuant to a motion under Federal Rule of Civil Procedure 56(f). *United States v. Kitsap Physicians Serv.,* 314 F.3d 995, 1000(9th Cir. 2002).

■ Finally, a district court's decision to grant or deny summary judgment is reviewed de novo. On appeal, the reviewing court applies the same standard used by the trial court: specifically, the court must "determine, viewing the evidence in the light most favorable to the nonmoving party, whether there are any genuine issues of material fact and whether the district court correctly applied the relevant substantive law." *Rene v. MGM Grand Hotel, Inc.,* 305 F.3d 1061, 1064 (9th Cir. 2002) (en banc). A district court's conclusions of law are reviewed de novo. *Shapiro ex rel. Shapiro v. Paradise Valley Unified Sch. Dist.,* 317 F.3d 1072, 1076 (9th Cir.2003).

## III. ANALYSIS

### A. Timeliness of the Appeal

As a threshold matter, we must determine whether Jones's appeal to this court was timely filed. We conclude that it was.

A notice of appeal must be filed within 30 days from the entry of judgment, Fed. R.App. P. 4(a). A notice filed by "an inmate confined in an institution" is considered timely if "deposited in the institution's internal mail system on or before the last day for filing," Fed. R.App. P. 4(c)(1). Timely filing under this rule "may be shown by a declaration in compliance with 28 U.S.C. § 1746" setting forth the date of deposit and stating that postage has been prepaid. *Id.* Under 28 U.S.C. § 1746, a matter may be proved by a signed statement, executed within the United States, that reads: "I declare (or certify, verify, or state) under penalty of perjury under the laws of the United States of America that the foregoing is true and correct. Executed on (date)."

■ The defendants contend that because Jones is a civil detainee rather than a prisoner, he cannot benefit from Rule 4(c), the so-called "prisoner mailbox rule." This contention is clearly contrary to the text of the rule, which by its terms—and in spite of its popular nickname—applies broadly to any "inmate confined in an institution." There is no express limitation of the rule's application to prisoners, or to penal institutions, and neither the rule itself nor defendants suggest any reason to infer such a limitation.

Jones is undisputably an inmate confined in an institution, specifically the Atascadero State Hospital. The judgment from which Jones appeals was entered on September 27, 2002. In a statement made in conformity with 28 U.S.C. § 1746, Jones attested that he deposited his notice of appeal (with postage prepaid) in the Atascadero State Hospital mail system on October 24, 2002. As he has complied with the requirements of Rule 4(c) within the 30–day period from the entry of judgment,

Jones's appeal is timely.[3]

### B. Statute of Limitations

Jones filed his complaint on December 29, 2000. Applying California's then-applicable one-year statute of limitations for personal injury actions, the district court concluded that Jones's claims accruing prior to December 29, 1999(approximately one week before Jones was transferred out of the Sacramento County Jail), were time-barred. The district court did not consider equitable tolling.

■ For actions under 42 U.S.C. § 1983, courts apply the forum state's statute of limitations for personal injury actions, along with the forum state's law regarding tolling, including equitable tolling, except to the extent any of these laws is inconsistent with federal law. *Fink v. Shedler*, 192 F.3d 911, 914 (9th Cir.1999). At the time Jones filed his suit, and at the time of the district court's decision, California's statute of limitations for personal injury actions was one year. *See* Cal.Civ. Proc.Code § 340(3) (West Supp.2002). Effective January 1, 2003, the new California statute of limitations for assault, battery,

and other personal injury claims is two years instead of one. Cal.Civ.Proc.Code § 335.1(West Supp.2004). Though a § 1983 action filed in California today would clearly be governed by California's new two-year statute of limitations for personal injury actions, *Fink*, 192 F.3d at 914, we have held that the new statute of limitations does not apply retroactively, *Maldonado v. Harris*, 370 F.3d 945, 955(9th Cir.2004), and so the appropriate limitations period remains one year in Jones's case.[4] Therefore the district court applied the correct limitations period.

■ Though California law provides for the tolling of a statute of limitations for a period of up to two years based on the disability of imprisonment, the language of the tolling provision applies only to plaintiffs "imprisoned on a criminal charge, or in execution under the sentence of a criminal court for a term less than for life." Cal.Civ.Proc.Code § 352.1.[5] Thus the literal language of the statute does not cover Jones, a civil detainee. *See Hubbart v. Superior Court*, 19 Cal.4th 1138, 81 Cal. Rptr.2d 492, 512–18, 969 P.2d 584, 605–11

---

**3.** Citing *Miller v. Sumner*, 921 F.2d 202 (9th Cir.1990), defendants contend that Fed. R.App. P. 4(c) does not apply because Jones deposited his notice of appeal in the U.S. mail. Our court has already squarely rejected this argument. *See Koch v. Ricketts*, 68 F.3d 1191, 1193 (9th Cir.1995) (observing that *Miller* predated the enactment of Rule 4(c) and holding unnecessary under Rule 4(c) the *Miller* requirement that an inmate file his notice of appeal in a manner that creates a mail log).

**4.** The Ninth Circuit has held that federal courts should apply federal law in determining whether a new state statute of limitations applies retroactively. *TwoRivers v. Lewis*, 174 F.3d 987, 993 (9th Cir.1999); *accord, Fink*, 192 F.3d at 914. The *Maldonado* court's conclusion is unaffected if the question is analyzed under federal, rather than state, retroactivity law. *See Chenault v. United States*

*Postal Serv.*, 37 F.3d 535, 539 (9th Cir.1994) (holding that under *Landgraf v. USI Film Prods.*, 511 U.S. 244, 114 S.Ct. 1483, 128 L.Ed.2d 229 (1994), "a newly enacted statute that lengthens the applicable statute of limitations may not be applied retroactively to revive a plaintiff's claim that was otherwise barred under the old statutory scheme because to do so would alter the substantive rights of a party and increase a party's liability" (internal punctuation omitted)).

**5.** The California courts have read out of the statute the qualification that the period of incarceration must be "for a term less than for life" in order for a prisoner to qualify for tolling. *Grasso v. McDonough Power Equipment, Inc.*, 264 Cal.App.2d 597, 70 Cal.Rptr. 458, 460–61 (1968); *see also Martinez v. Gomez*, 137 F.3d 1124, 1126 (9th Cir.1998) (recognizing the continuing vitality of *Grasso*).

(1999) (treating SVPA detention as civil in nature).

However, the district court erred in failing to apply equitable tolling.[6] Equitable tolling under California law " 'operates independently of the literal wording of the Code of Civil Procedure' to suspend or extend a statute of limitations as necessary to ensure fundamental practicality and fairness." *Lantzy v. Centex Homes*, 31 Cal.4th 363, 2 Cal.Rptr.3d 655, 660, 73 P.3d 517, 523 (2003) (citation and internal quotation marks omitted). The purpose of California's equitable tolling doctrine "is to soften the harsh impact of technical rules which might otherwise prevent a good faith litigant from having a day in court." *Daviton v. Columbia/HCA Healthcare Corp.*, 241 F.3d 1131, 1137(9th Cir.2001) (en banc) (quoting *Addison v. State*, 21 Cal.3d 313, 146 Cal.Rptr. 224, 225, 578 P.2d 941, 942 (1978)) (internal quotation marks omitted). Thus California courts apply equitable tolling "to prevent the unjust technical forfeiture of causes of action, where the defendant would suffer no prejudice." *Lantzy*, 2 Cal.Rptr.3d at 660, 73 P.3d at 523. Application of California's equitable tolling doctrine "requires a balancing of the injustice to the plaintiff occasioned by the bar of his claim against the effect upon the important public interest or policy expressed by the ... limitations statute." *Id.* at 660, 73 P.3d at 524 (quoting *Addison*, 146 Cal.Rptr. at 228, 578 P.2d at 945) (internal quotation marks omitted) (omission in original).

On one side of the balance in this case is the generic public policy interest in ensuring prompt resolution of legal claims. *See Addison*, 146 Cal.Rptr. at 225, 578 P.2d at 942–43. Fairness to the defendant requires that a case be brought when memories have not been affected by time, when all pertinent witnesses can still be called, and when physical evidence has not been destroyed or dispersed. In addition to these evidentiary concerns, the public has an interest in avoiding the cultivation of stale grievances and grudges. Statutes of limitations are not legalistic gimmicks but embody the experience of Anglo–American law that it is sound public policy to set a specific time within which a given legal action may be brought. But if some obstacle unanticipated by the legislature has prevented a plaintiff from pursing his claim, equity may find a way around the statute. *See Lantzy*, 2 Cal.Rptr.3d at 662, 73 P.3d at 524.

The injustice arising from a refusal to toll the statute of limitations for Jones would be great, particularly in light of California's tolling provision for the disability of imprisonment. Observing that the law provides for tolling for criminal inmates "in recognition of their more limited ability to investigate their claims, to contact lawyers and to avail themselves of the judicial process," we have emphasized that"[i]n terms of limitations on the prisoner, continuous custody is the relevant disability." *Elliott v. City of Union City*, 25 F.3d 800, 803 (9th Cir.1994). For this reason, we have held that "actual, uninterrupted incarceration is the touchstone" for applying California's tolling provision for the disability of imprisonment. *Id.* (quoting *Bianchi v. Bellingham Police Department*, 909 F.2d 1316, 1318 (9th Cir.1990)) (internal quotation marks omitted).

The rationale behind the "actual, uninterrupted incarceration" rule applies with equal force to the case of an individual continuously detained under civil process.

---

**6.** Because the key fact pertaining to the applicability of equitable tolling—Jones's civil commitment—is undisputed, the district court's refusal to apply equitable tolling is reviewed de novo. *Santa Maria v. Pac. Bell*, 202 F.3d 1170, 1175 (9th Cir.2000).

As the California Supreme Court recognized long ago, "[t]he destruction of an individual's personal freedoms effected by civil commitment is scarcely less total than that effected by confinement in a penitentiary." *People v. Burnick,* 14 Cal.3d 306, 121 Cal.Rptr. 488, 498, 535 P.2d 352, 363 (1975). Like criminal inmates, civil detainees litigate under serious disadvantages. The civilly confined are limited in their ability to interview witnesses and gather evidence, their access to legal materials, their ability to retain counsel, and their ability to monitor the progress of their lawsuit and keep abreast of procedural deadlines. *See Rand v. Rowland,* 154 F.3d 952, 958 (9th Cir.1998) (cataloguing the litigation obstacles that arise from some of the "unique handicaps of incarceration"). Thus our rationale for the "actual, uninterrupted incarceration" rule in the context of tolling for criminal imprisonment is equally applicable to the context of civil confinement: civil detainees, like their criminal counterparts, suffer from "more limited ability to investigate their claims, to contact lawyers and to avail themselves of the judicial process." *Elliott,* 25 F.3d at 803.

Equitable tolling is particularly appropriate in Jones's case. For roughly the first half of the period in which Jones was confined awaiting SVPA adjudication, Jones was held in the general prison population and was thus subject to conditions—and therefore obstacles to litigation—identical to those of a criminal inmate. For the second half of Jones's confinement, he was held in "T–Sep," where his access to the law library and to visitors was further curtailed. Thus at the beginning of Jones's civil confinement, his "civil" label did not afford him any greater access to lawyers, legal materials, or the tools of discovery than his criminal cellmates had; after Jones's transfer to T–Sep, the "civil" label actually afforded him less. To deny to Jones the same benefit that California's disability tolling provision affords to his criminally confined cellmates would yield the arbitrary result that two individuals housed in the same penal facility under the same or similar conditions would have differing access to the courts based solely on a difference in label.

The access to the courts claim Jones has brought in this lawsuit hints at another pernicious consequence of refusing to toll the statute of limitations for the civilly confined: such a rigid doctrine would effectively insulate from legal challenge the very confinement policies that may unconstitutionally restrict a detainee's access to justice in the first place. In this case, for example, Jones alleges conditions of confinement that would make the filing of a lawsuit practically impossible even for a trained attorney. The difficulties of conducting legal research under the restrictions Jones alleges—no physical access to the law library, no access to cases twenty pages or longer, access to cases only by citation—are self-evident. In this case, without tolling, the statute of limitations on Jones's § 1983 claims would have run while he was still confined in the Sacramento County Jail and still subject to the library restrictions he now challenges. Without equitable tolling to protect a civil detainee's access to justice, the harshest restrictions on legal research would be self-perpetuating: the harsher the restriction, the less likely it would be that a civil detainee could acquire the legal ammunition necessary to challenge it before his statute of limitations has run.

For these reasons, in the case of a civil detainee who has acted in good faith to pursue his claims, the balance tips sharply in favor of equitably tolling the statute of limitations "to ensure fundamental practicality and fairness," *Lantzy,* 2

Cal.Rptr.3d at 660, 73 P.3d at 523, and "to soften the harsh impact of technical rules which might otherwise prevent a good faith litigant from having a day in court." *Daviton,* 241 F.3d at 1137(citation and internal quotation marks omitted). We therefore hold that California's equitable tolling doctrine operates to toll a statute of limitations for a claim asserted by a continuously confined civil detainee who has pursued his claim in good faith. The dismissal of Jones's claims accruing prior to December 29, 1999, must be reversed.

### C. Conduct of Discovery

 Jones assigns error to the district court's series of denials of his requests to extend discovery, and to the court's related denial of Jones's Rule 56(f) motion to stay summary judgment. Under Rule 56(f), the court may postpone ruling on a summary judgment motion where the non-moving party needs "additional discovery to explore 'facts essential to justify the party's opposition.'" *Crawford–El v. Britton,* 523 U.S. 574, 599 n. 20, 118 S.Ct. 1584, 140 L.Ed.2d 759 (1998) (quoting Fed. R. Civ. Pro. 56(f)). Though the conduct of discovery is generally left to a district court's discretion, summary judgment is disfavored where relevant evidence remains to be discovered, particularly in cases involving confined pro se plaintiffs. *Klingele v. Eikenberry,* 849 F.2d 409, 412 (9th Cir.1988); *Harris v. Pate,* 440 F.2d 315, 318 (7th Cir.1971) (Stevens, J.) (observing that the combined disabilities of self-representation and confinement hinder a plaintiff's ability to gather evidence). Thus summary judgment in the face of requests for additional discovery is appropriate only where such discovery would be "fruitless" with respect to the proof of a viable claim. *Klingele,* 849 F.2d at 412.

 In this case, Jones acted diligently and reasonably in pursuing discovery: he served one set of interrogatories within the allotted sixty days, then served another shortly after and moved the court to extend discovery when he needed more time and found himself in disagreement with the defendants. In spite of his efforts, due to the lack of counsel and the limitations in information and resources associated with Jones's confinement at Atascadero, he was simply unable to comply with the district court's schedule. The few discovery requests of Jones's that appear in the record ask for documentation of the details of the strip searches of Jones: specifically, Jones requested jail records of the searches, including relevant correspondence and the names of participating officers. These requests seem highly relevant to Jones's Fourth Amendment claim. On the basis of these of requests alone, it is clear that additional relevant evidence remained to be discovered.

The district court granted summary judgment to Blanas and the County on Jones's unreasonable search claim because Jones failed to present evidence implicating either Blanas or a Sacramento County policy in the searches to which Jones was subjected. However, Jones's discovery requests for jail records related to the searches may well have produced evidence that would have enabled Jones to tie the searches to policies of Blanas or the County. At least with respect to Jones's Fourth Amendment claim, then, additional discovery would not have been "fruitless," *Klingele,* 849 F.2d at 412, and the district court therefore abused its discretion in refusing to permit it. Summary judgment on the Fourth Amendment claim must accordingly be reversed.

 On Jones's access to courts claim, the district court granted summary judgment against Jones on account of deficiencies of evidence relating entirely to facts

within Jones's own control: the injuries (or lack thereof) that Jones sustained as a result of the restrictions on his law library access. With respect to facts such as these, it is unlikely that additional discovery would have made a difference as to Jones's ability to present relevant evidence. Therefore such discovery would have been "fruitless," and so summary judgment with respect to his access to the courts claim should not be reversed on this basis.[7]

## D. Substantive Due Process

Jones claims that Blanas and the County violated his substantive due process rights by confining him for a year among the general criminal inmate population of the Sacramento County Jail and for another year in T–Sep, an administrative segregation unit where Jones experienced substantially more restrictive conditions than those prevailing in the Main Jail. While in T–Sep, Jones was afforded substantially less exercise time, phone and visiting privileges, and out-of-cell time than inmates in the general population. Jones was completely cut off from recreational activities, religious services, and physical access to the law library. Jones continued to be subjected to strip searches during this time.

According to the district court, Jones was required to establish that the defendants "deprived [him] of the 'minimal civilized measure of life's necessities'" (quoting *Rhodes v. Chapman,* 452 U.S. 337, 101 S.Ct. 2392, 69 L.Ed.2d 59 (1981)). Under this standard, the district court found that Jones's claim could not succeed because he had not established a right to any particular amount of recreation, exercise, or fresh air and sunlight.

Though it purported to analyze Jones's conditions of confinement claim under the Fourteenth Amendment, the district court actually applied the standards that govern a claim of cruel and unusual punishment under the Eighth Amendment. The court mistook the amendment that was to be applied.

 "[T]he more protective fourteenth amendment standard applies to conditions of confinement when detainees ... have not been convicted" of a crime. *Gary H. v. Hegstrom,* 831 F.2d 1430, 1432 (9th Cir.1987) (citing *Youngberg v. Romeo,* 457 U.S. 307, 102 S.Ct. 2452, 73 L.Ed.2d 28 (1982) (civilly committed individuals), and *Bell v. Wolfish,* 441 U.S. 520, 99 S.Ct. 1861, 60 L.Ed.2d 447 (1979) (pretrial detainees)). The Fourteenth Amendment requires the government to do more than provide the "minimal civilized measure of life's necessities," *Rhodes,* 452 U.S. at 347, 101 S.Ct. 2392, for non-convicted detainees. Rather, "due process requires that the nature and duration of commitment bear some reasonable relation to the purpose for which the individual is committed." *Jackson v. Indiana,* 406 U.S. 715, 738, 92 S.Ct. 1845, 32 L.Ed.2d 435 (1972).

 The case of the individual confined awaiting civil commitment proceedings implicates the intersection between two distinct Fourteenth Amendment imperatives. First, "[p]ersons who have been involuntarily committed are entitled to more considerate treatment and conditions of confinement than criminals whose conditions of confinement are designed to punish." *Youngberg,* 457 U.S. at 321–22, 102 S.Ct. 2452. Second, when the state detains an individual on a criminal charge, that person, unlike a criminal convict,

---

7. It is not necessary to consider whether the district court's conduct of discovery warrants reversal with respect to the free exercise or substantive due process claims, as we find that summary judgment on these claims was inappropriate for other reasons.

"may not be *punished* prior to an adjudication of guilt in accordance with due process of law." *Bell,* 441 U.S. at 535, 99 S.Ct. 1861 (emphasis added); *see also Demery v. Arpaio,* 378 F.3d 1020, 1029 (9th Cir.2004) ("[T]he Fourteenth Amendment prohibits all punishment of pretrial detainees."). As civil detainees retain greater liberty protections than individuals detained under criminal process, *see Youngberg,* 457 U.S. at 321–24, 102 S.Ct. 2452, and pre-adjudication detainees retain greater liberty protections than convicted ones, *see Bell,* 441 U.S. at 535–36, 99 S.Ct. 1861, it stands to reason that an individual detained awaiting civil commitment proceedings is entitled to protections at least as great as those afforded to a civilly committed individual and at least as great as those afforded to an individual accused but not convicted of a crime.

▮ In light of these principles, the Eleventh Circuit held in *Lynch v. Baxley,* 744 F.2d 1452 (11th Cir.1984), that individuals awaiting involuntary civil commitment proceedings may not constitutionally be held in jail at all. *Id.* at 1463. We need not go so far in order to decide this case. Here, it suffices to say that the conditions of confinement for an individual detained under civil process but not yet committed must be tested by a standard at least as solicitous to the rights of the detainee as the standards applied to a civilly committed individual and to an individual accused but not convicted of a crime.

▮ At a bare minimum, then, an individual detained under civil process—like an individual accused but not convicted of a crime—cannot be subjected to conditions that "amount to punishment." *Bell,* 441 U.S. at 536, 99 S.Ct. 1861. Following *Bell,* we have recognized that punitive conditions may be shown (1) where the challenged restrictions are expressly intended to punish, or (2) where the challenged

restrictions serve an alternative, non-punitive purpose but are nonetheless "excessive in relation to the alternative purpose," *Demery,* 378 F.3d at 1028 (quoting *Bell,* 441 U.S. at 538, 99 S.Ct. 1861) (quotation marks and further citation omitted), or "are employed to achieve objectives that could be accomplished in so many alternative and less harsh methods," *Hallstrom v. City of Garden City,* 991 F.2d 1473, 1484 (9th Cir.1993) (quoting *Bell,* 441 U.S. at 539 n. 20, 99 S.Ct. 1861) (quotation marks and internal punctuation omitted). Legitimate, non-punitive government interests include ensuring a detainee's presence at trial, maintaining jail security, and effective management of a detention facility. *Id.*

▮ The civil nature of SVPA confinement provides an important gloss on the meaning of "punitive" in this context. Because he is detained under civil—rather than criminal—process, an SVPA detainee is entitled to "more considerate treatment" than his criminally detained counterparts. *Youngberg,* 457 U.S. at 321–22, 102 S.Ct. 2452. Therefore when a SVPA detainee is confined in conditions identical to, similar to, or more restrictive than, those in which his criminal counterparts are held, we presume that the detainee is being subjected to "punishment." *See Sharp v. Weston,* 233 F.3d 1166, 1172–73(9th Cir.2000) (finding that *Youngberg* required that individuals civilly confined at a commitment center receive "more considerate" treatment than inmates at the correctional center in which the commitment center was located).

▮ In addition to comparing the conditions of confinement of pre-adjudication *civil* detainees to those of pre-trial *criminal* detainees, it is also relevant to compare confinement conditions of civil detainees *pre-adjudication* to conditions *post-commitment.* As the Eleventh Circuit has

persuasively reasoned, "[i]f pretrial detainees cannot be punished because they have not yet been convicted, [citing *Bell* ], then [civil] detainees cannot be subjected to conditions of confinement substantially worse than they would face upon commitment." *Lynch*, 744 F.2d at 1461. Or, to put it more colorfully, purgatory cannot be worse than hell. Therefore when an individual awaiting SVPA adjudication is detained under conditions more restrictive than those the individual would face following SVPA commitment, we presume the treatment is punitive.

*Seling v. Young*, 531 U.S. 250, 121 S.Ct. 727, 148 L.Ed.2d 734 (2001), is not to the contrary. There the Supreme Court held that a sexually violent predator law was not subject to as-applied Ex Post Facto and Double Jeopardy challenges based on the lack of treatment received by a particular detainee under the law. *Id.* at 263, 121 S.Ct. 727. The Court spoke only to the constitutionality of the sexually violent predator law itself, not the constitutionality of any particular conditions of confinement. As the Court explained, its decision "does not mean that [those] committed as sexually violent predators have no remedy for the alleged conditions and treatment regime" to which they are subjected: "due process requires that the conditions and duration of confinement ... bear some reasonable relation to the purposes for which persons are committed." *Id.* at 265, 121 S.Ct. 727(citing *Youngberg*, among other cases). It is the violation of this due process principle for which Jones seeks relief in this case.

■ Nor does the status of the sexually violent predator as one who has *previously* been convicted of crime limit the rights of one detained under the SVPA. *See Robinson v. California*, 370 U.S. 660, 666–67, 82 S.Ct. 1417, 8 L.Ed.2d 758 (1962) (holding unconstitutional the conviction and punishment of an individual based on his "status"). In upholding the SVPA against challenge under the Ex Post Facto Clause, the California Supreme Court (following the United States Supreme Court) has stressed the civil nature of sexually violent predator commitment. *See Hubbart v. Superior Court*, 19 Cal.4th 1138, 81 Cal.Rptr.2d 492, 512–18, 969 P.2d 584, 605–611 (1999). In particular, the California Supreme Court noted that "[t]he Legislature ... made clear that, despite their criminal record, persons eligible for commitment and treatment as SVP's are to be viewed 'not as criminals, but as sick persons.'" *Id.* 81 Cal.Rptr.2d at 513, 969 P.3d at 606 (citing Cal. Welf. & Inst.Code § 6250). The state cannot have it both ways. If the confinement of a sexually violent predator is civil for the purposes of evaluation under the Ex Post Facto Clause, that confinement is civil for the purposes of determining the rights to which the detainee is entitled while confined. Civil status means civil status, with all the Fourteenth Amendment rights that accompany it.

Finally, we have held in *Oregon Advocacy Center v. Mink*, 322 F.3d 1101 (9th Cir.2003), that the Eighth Amendment's "deliberate indifference" standard of culpability does not apply in the context of an incapacitated criminal defendant's Fourteenth Amendment challenge to conditions of confinement. *Id.* at 1120–21. If an incapacitated *criminal* defendant need not prove "deliberate indifference" to state a substantive due process claim, then neither should a *civil* detainee, who retains greater liberty protections than his criminal counterpart. *Youngberg*, 457 U.S. at 321–24, 102 S.Ct. 2452.

■ In sum, a civil detainee awaiting adjudication is entitled to conditions of confinement that are not punitive. Under *Bell* and our circuit precedent, a restric-

tion is "punitive" where it is intended to punish, or where it is "excessive in relation to [its non-punitive] purpose," *Demery,* 378 F.3d at 1028(citation and internal quotation marks omitted), or is "employed to achieve objectives that could be accomplished in so many alternative and less harsh methods," *Hallstrom,* 991 F.2d at 1484 (citation and internal quotation marks omitted). With respect to an individual confined awaiting adjudication under civil process, a presumption of punitive conditions arises where the individual is detained under conditions identical to, similar to, or more restrictive than those under which pretrial criminal detainees are held, or where the individual is detained under conditions more restrictive than those he or she would face upon commitment. Finally, to prevail on a Fourteenth Amendment claim regarding conditions of confinement, the confined individual need not prove "deliberate indifference" on the part of government officials.

■ Applying this standard to Jones's case, we find that summary judgment must be reversed. While in the general population, Jones was subject to precisely the same conditions as criminal inmates. He was not afforded the "more considerate" treatment to which he is constitutionally entitled as a civil detainee. *Youngberg,* 457 U.S. at 321–22, 102 S.Ct. 2452. Thus, a presumption arises that Jones's year-long confinement in the general criminal population of the jail was punitive. This presumption is rebuttable, to be sure, and so on remand the defendants must be given an opportunity to explain what legitimate, non-punitive purpose justified Jones's detention under these conditions. But under *Bell* and circuit precedent, the defendants cannot justify holding Jones in the general criminal population for a year based solely on the generalized statutory requirement that Jones be detained in a

"secure facility" while awaiting proceedings pursuant to the SVPA, *see* Cal. Welf. & Inst.Code § 6602, because Jones's detention appears "excessive in relation to" this purpose, *Demery,* 378 F.3d at 1028 (citation and quotation marks omitted), and could have been carried out via "alternative and less harsh methods." *Hallstrom,* 991 F.2d at 1484(citation and internal quotation marks omitted). In fact, the California Penal Code *demands* a "less harsh method" of confinement for SVPA detainees: namely, holding them separately from criminal detainees. Cal.Penal Code §§ 4001, 4002(a). Thus California law itself suggests that Jones's detention in the general inmate population was "excessive."

■ As for Jones's time in T–Sep, the declaration of the sheriff's deputy that T–Sep was "not a disciplinary category" is belied by the restrictions Jones and others faced while in T–Sep. The significant limitations on, or total denials of, recreational activities, exercise, phone calls, visitation privileges, out-of-cell time, access to religious services, and access to the law library, indicate that in numerous respects confinement in T–Sep was substantially more restrictive than confinement in the Main Jail. Thus a presumption of punitiveness arises as to Jones's year in T–Sep as well as his year in the general population. Once again, the defendants must have an opportunity to offer legitimate, non-punitive justifications, but a bare assertion of the requirement of keeping SVPA detainees separate from the general population pursuant to California Penal Code sections 4001 and 4002(a) will not suffice. While this goal imposed by state law is a sensible one, the state must show how the bevy of restrictions Jones faced in T–Sep was not "excessive in relation to" the purpose of keeping civil and criminal detainees separate, *Demery,* 378 F.3d at 1028 (citation

and internal quotation marks omitted), and why this purpose could not have been achieved by "alternative and less harsh methods," *Hallstrom,* 991 F.2d at 1484(citation and internal quotation marks omitted). If the criminal population can be safely housed without the restrictions of T–Sep, it is difficult to see why SVPA detainees could not be so housed as well.

■ For these reasons, summary judgment as to Jones's substantive due process claim must be reversed. On remand, the government should be permitted to demonstrate legitimate, non punitive interests justifying the conditions of Jones's confinement, and to show that the restrictions imposed on Jones were not "excessive" in relation to these interests. For his part, Jones should be permitted additional discovery to flesh out both the nature of the conditions in which he was held and the involvement of Blanas and of the County in subjecting him to these conditions.

### E. Free Exercise

■ On Jones's free exercise claim, the district court granted the defendants summary judgment because Jones "ha[d] not explained how a general denial of access to religious services ... denied him his ability to practice his own religion (assuming of course that plaintiff is religious)." In so concluding, the district court disregarded Jones's explanation in his Objections to Magistrate Judge's Findings and Recommendations, filed eight days before the district court adopted the magistrate's Findings in full. Specifically, Jones explained: "As a believer of the Christian faith I believe that we 'should not forsake the assembling of ourselves together' .... Without the benefit of communal services plaintiff was denied the uplifting of the spirit, the reassurance of fellow Christians that I am one with God, that we are saved by faith and not by deed. Plaintiff was

denied the joy of communal praise of God" (quoting *Hebrews* 10:25 (King James)).

■ Though a district court has discretion not to consider evidence offered for the first time in a party's objections to a magistrate judge's proposed findings and recommendations, the court "must actually exercise its discretion" rather than simply ignore the evidence or reject it *sub silentio. Brown v. Roe,* 279 F.3d 742, 744 (9th Cir.2002). Because Jones was pro se and concluded his Objections with a signed statement attesting under penalty of perjury to their truth, Jones's explanation of his religious beliefs qualifies as evidence for the purpose of opposing a summary judgment motion. *Johnson v. Meltzer,* 134 F.3d 1393, 1399–1400 (9th Cir.1998); *Schroeder v. McDonald,* 55 F.3d 454, 460 n. 10 (9th Cir.1995). The district court therefore erred in failing to exercise its discretion whether to consider Jones's explanation. *Brown,* 279 F.3d at 745. Moreover, given the circumstances under which this evidence was offered—a pro se plaintiff, ignorant of the law, offering crucial facts as soon as he understood what was necessary to prevent summary judgment against him—it would have been an abuse of discretion for the district court not to consider the evidence. *See id.* (holding that even if the court had exercised its discretion whether to consider a pro se habeas petitioner's new argument raised in objections to a magistrate's report, refusal to consider the argument would have been an abuse of discretion).

Jones's description of his religious beliefs could hardly have been clearer in specifying how the denial of access to religious services impinged upon his practice of his religion, and the district court should have considered this evidence. Therefore summary judgment on Jones's free exercise claim must be reversed.

## F. Access to the Courts

 On Jones's access to the courts claim, the magistrate judge recommended summary judgment for the defendants because Jones "failed to present any evidence indicating that he ha[d] been injured in any way by his inability to participate in 'law library activities,' as he must do pursuant to *Lewis v. Casey*," 518 U.S. 343, 351, 116 S.Ct. 2174, 135 L.Ed.2d 606 (1996). This is a correct statement of the law and a proper application. The district court is correct that Jones did not allege injury, such as inability to file a complaint or defend against a charge, stemming from the restrictions on his access to the law library. Therefore summary judgment on Jones's access to the courts claim was appropriate.

## G. Additional Issues Raised by the Parties

The district court denied Eleventh Amendment immunity to Blanas and held that the County could be subject to liability for Blanas's actions under *Monell v. Department of Social Services*, 436 U.S. 658, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978). Though Jones's briefs defend the propriety of these holdings, defendants do not disagree or request reversal.

In their briefs, the parties debate the questions whether Blanas may be held liable on a supervisory theory of liability, whether Blanas is entitled to qualified immunity in his personal capacity, and whether the county should be held liable pursuant to *Monell*. Because the district court did not reach these issues since it found no constitutional violations, we decline to address these issues in the first instance. If and when these issues arise on remand, the district court should address them at that time.

## IV. CONCLUSION

In summary:

1. Jones's appeal was timely because he was an "inmate confined in an institution" and complied with Rule 4(c).

2. We find that California's equitable tolling doctrine must apply to toll the statute of limitations for claims asserted by a continuously confined civil detainee who has pursued his claims in good faith. Because the district court erred in failing to apply equitable tolling, the district court's dismissal of Jones's claims accruing prior to December 29, 1999, is reversed.

3. The district court abused its discretion in denying Jones's requests to extend discovery and his motion to stay discovery pursuant to Rule 56(f). These errors require reversal of summary judgment as to Jones's unreasonable search claim. On remand, Jones must be permitted to reopen discovery.

4. The district court applied the wrong standard to Jones's substantive due process claim. Under the Fourteenth Amendment, a civil detainee awaiting adjudication is entitled to conditions of confinement that are not punitive, i.e. not intended to be punitive, excessive in relation to their non-punitive purpose, or employed for purposes that could be achieved by less harsh methods. Summary judgment on Jones's substantive due process claim is therefore reversed. On remand, the claim is to be evaluated according to the principles we have set forth.

5. On Jones's free exercise claim, the district court improperly granted summary judgment without exercising its discretion as to whether to consider key evidence Jones offered in his Objections to the magistrate judge's Findings. Failure to consider this evidence would have been an abuse of discretion in any

event. Summary judgment is therefore reversed on this claim.

6. Summary judgment against Jones was proper as to the access to the courts claim, because Jones failed to submit facts showing how the denial of access to the law library resulted in injury. Therefore summary judgment as to this claim is affirmed.

7. Because of the complexity and weightiness of Jones's claims, we instruct the district court on remand to appoint counsel to assist Jones in pursuing his case.

**AFFIRMED IN PART, REVERSED IN PART, AND REMANDED WITH INSTRUCTIONS.**